## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**MICHAEL SUTHERLAND**, and
**COMFY MATERIALS LLC**,

      Plaintiffs,

v.                                                    Case No. 8:24-cv-00854-WFJ-NHA

**WELLSHOW MACHINING
PARTS, INC.**,

      Defendant.

_____/

## <u>ORDER</u>

Before the Court is Defendant Wellshow Machining Parts, Inc.'s ("Defendant") motion for summary judgment (Dkt. 61) regarding Plaintiffs Michael Sutherland and Comfy Materials LLC's ("Plaintiffs") amended complaint (Dkt. 17), as well as Plaintiffs' motion for summary judgment (Dkt. 58) regarding Defendant's amended counterclaim (Dkt. 45). The parties have filed their respective responses (Dkts. 65, 66) and replies (Dkts. 69, 70), and further submitted supplemental briefings (Dkts. 74, 75). Upon careful consideration of the filings and arguments, the Court grants in part and denies in part Defendant's motion for summary judgment, and grants Plaintiffs' motion for summary judgment.

1

## BACKGROUND[1]

The parties are vendors, primarily online, of materials including filament for 3D printing. This case arises from Defendant's sale of such products via online distribution partners, including Amazon. Dkt. 47 ¶¶ 7, 8. These products each included certain descriptions in their listings. Dkt. 17 ¶ 17; Dkt. 45 ¶¶ 12–16. Plaintiffs provide an incomplete screenshot of an alleged Amazon listing by Defendant from March 23, 2024. Dkt. 17-2. While the title of this listing is obscured in this screenshot, the description reads as follows:

- 【Food Safe】Wellshow PETG Filament is lab certified in compliance with 21CFR 177.2420.

- 【Wide Compatibility】Compatible with most of the FDM 3D Printers such as BAMBU P1P, X1C, P1S, A1 mini, Comgrow Creality Ender, ANYCUBIC, Creality 3D, etc. Works in AMS(Automatic Material System)

- 【Better fluidity+clog free】Good fluidity enables PLA+(PRO) filament to be extruded evenly and smoothly during printing.

- 【Better toughness】Enhanced version of PLA+(PRO) filament ensures smoother and better toughness. Toughened and hard to break, better elongation at break

- 【Anytime Service】Whenever you encounter any printing issues, Wellshow will assist you to achieve perfect printing.

---

[1] The following is a summary consisting of facts that are not in dispute. Although some of the facts the Court finds undisputed may be nominally contested, mere speculation or conjecture does not create a genuine dispute. *See Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005). Those facts which are merely alleged are labeled as such.

*Id.* Plaintiffs further allege that there were "sixty (60) or more Amazon listings for Defendant Wellshow's products" at issue, "including . . . PETG and PLA filament products." Dkt. 17 ¶ 17. No further information regarding the "sixty (60) or more Amazon listings" is provided by Plaintiffs. *Id.* Because all further instances referenced by Plaintiffs relate back to the sole initial screenshot, the language of this listing will be used for the Court's ensuing analyses. *See, e.g.*, Dkt. 64 ¶ 9; Dkt. 65 at 7; Dkt. 74 at 4, 11.

Plaintiffs registered a copyright with the U.S. Copyright Office for a certain work (the "Work") entitled "Certified Food Grade PETG 3D Printer Filament - CARBON by Comfy Materials - Lab Tested FDA Compliant Food Safe, 1.75mm, 1kg, Accuracy: +/- 0.02" under Registration Number TX 9-379-454 on March 29, 2024. Dkt. 17-1; Dkt. 61 at 1; Dkt. 64-1. Plaintiffs provide the full text of the claimed Work, which reads as follows:

> Certified Food Grade PETG 3D Printer Filament - CARBON by Comfy Materials - Lab Tested FDA Compliant Food Safe, 1.75mm, 1kg, Accuracy: +/- 0.02
>
> About this item
>
> ● 【Certified Food Grade and Food Contact Safe】 -- Extruded from Eastman GN071 Copolyester. CARBON PETG Filament is Food Grade Certified by both TÜV SÜD and SGS with reference to 21 CFR 177.1630 of The U.S. Food & Drug Administration Code of Federal Regulations (FDA 21 CFR 177.1630). Certificate included in listing images. GN071 is low odor (GREENGUARD Certified) and safe for the environment (Cradle to Cradle Certified).

3

● 【Lab Tested】 -- Most PETG Filaments are not safe for contact with food. To be considered Food Grade, the Material must meet certain chemical requirements, which are specified by the FDA Code of Federal Regulations. The Material should be Laboratory tested in accordance with FDA 21 CFR 177.1630. PETG filaments can be produced from Food Grade and Non-Food Grade Raw Materials. CARBON by Comfy Materials PETG is lab certified by both TÜV SÜD and SGS, in compliance with FDA 21 CFR 177.1630.

● 【Smooth Printing】 -- Eastman GN071 Copolyester is one of the easiest resins to extrude and thermoform with. Advanced CCD diameter measuring and self adaptive control system in the manufacturing produces PETG filaments of 1.75 mm diameter, with dimensional accuracy of: +/- 0.02 mm. A stable dimensional accuracy ensures you a smooth feeding experience.

● 【Mechanical Properties and Consistency】 -- Use GN071 Copolyester for both 3D Printing and Injection Molding. CARBON by Comfy Materials PETG maintains Mechanical Consistency throughout your Project. Tensile strength (X-Y): 50 ± 1.1 (MPa), Bending modulus: 2100 ± 64 (MPa), Bending strength: 68 ± 2.4 (MPa), Izod impact strength: 103 ± 0.3 (J/m), Deflection Temperature: @0.455 MPa (66 psi) D 648 70 °C (158 °F), Processing Melt Temperature: 249-271 °C (480-520 °F).

● 【Professional Packaging & Compatibility】 -- Filament is vacuum packaged with desiccant to keep filament dry and free of dust and foreign particles. Perfectly compatible with most FDM 3D printers, that support 3rd party materials. These include: Makerbot, Zortrax, Quidi, Prusa i3 MK3, M3D, Robo 3D, Wanhao, Creality Ender 3, Monoprice, FlashForge and more.

Product Description

CARBON by Comfy Materials PETG filaments are extruded from premium Eastman GN071 CoPolyester plastic, which feeds smoothly and constantly without clogging the nozzle or extruder while printing. Eastman GN071 Copolyester is one of the easiest resins to extrude and thermoform. Eastman GN071 is best-in-class for its processing ease,

4

energy efficiency, thermoformability, and versatility. It is BPA free, has effective barrier properties, and is not a material of concern. It is also an excellent alternative for Polystyrene (PS) and PVC materials.

Eastman GN071 is certified to NSF/ANSI Standard 51 for Food Equipment Materials and may be used in various food contact applications in accordance with the U.S. Food & Drug Administration Regulations. It has also been GREENGUARD Indoor Air Quality Certified by The GREENGUARD Certification Program and received a Platinum-level Material Health Certificate from the Cradle to Cradle Products Innovation Institute. The Material Health Certificate provides manufacturers with a trusted way to communicate their efforts to identify and replace chemicals of concern in their products.

The use of this high quality raw material allows CARBON by Comfy Materials to provide a filament that is certified food grade and food safe, with low odor, low warpage, high impact strength and good liquidity (flows smoothly). Our Clear PETG filament is Verified Compatible with the Prusa Mini & MakerBot Method Printer with Labs Extruder, as well as other open materials FDM 3D printers.

Dkt. 64-1.

Sometime after the filing of the foregoing copyright, Plaintiffs submitted various takedown requests to Amazon, utilizing the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 512. Dkt. 47 ¶ 12; Dkt. 56 at 9. Plaintiffs made these requests upon the allegation that Defendant had several listings with descriptions that infringed upon their copyright. *Id.* As a result, the sale of Defendant's reported products was suspended, and the products were removed from Amazon's warehouses. Dkt. 47 ¶ 16. Plaintiffs have since admitted that this has deprived Defendant of access to customers, caused significant harm to Defendant's business, and prevented sales Defendant would otherwise have made. *Id.* ¶ 15. Further,

Plaintiffs have admitted that their actions "to prevent competition on the Amazon platform have allowed them to increase their sales, to the determinant [sic] of [Defendant]." *Id.* ¶ 19.

In addition to infringing upon their copyright, Plaintiffs further allege that the descriptions included in Defendant's listings were false or misleading. Dkt. 17 ¶¶ 50–57. Specifically, Plaintiffs claim Defendant falsely or misleadingly described their PLA product as PETG and listed their product as "food safe" and "lab certified in compliance with [21 C.F.R.] 177.2420." *Id.* ¶ 52. To support this claim, Plaintiffs provide what they purport are lab test results and material safety data sheets sourced from Defendant. Dkts. 64-3, 64-4, 64-5, 64-6, 64-7, 64-8. Plaintiffs allege that the results and data sheets conflict with each other and with the descriptions on the listing. Dkt. 64 ¶¶ 10–11.

Plaintiffs' Amended Complaint now brings the following two counts against Defendant: Copyright Infringement in violation of 17 U.S.C. § 106 (Count I); and False Advertising in violation of § 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B) (Count II). Dkt. 17.

Defendant's motion requests that the Court enter summary judgment denying both Counts I and II of Plaintiffs' Amended Complaint. Dkt. 61. Defendant argues that there are no genuine disputes of material fact regarding Plaintiffs' claims, Dkt.

61 at 3, 8; Dkt. 70 at 2, and that "no reasonable jury could return a verdict for Plaintiffs," Dkt. 61 at 10; Dkt. 70 at 6.

Defendant's Amended Counterclaim brings one count against Plaintiffs: Tortious Interference with a Business Relationship, per Florida common law. Dkt. 45.

Plaintiffs' motion seeks the Court to enter summary judgment denying the claim underlying Defendant's Amended Counterclaim. Dkt. 58. Plaintiffs argue that there are no genuine disputes of material fact regarding Defendant's claim, Dkt. 58 at 1; Dkt. 69 at 5, and that summary judgment is warranted as a matter of law, Dkt. 61 at 10; Dkt. 66 at 10; Dkt. 70 at 6.

## LEGAL STANDARD

Summary judgment is only appropriate when the moving party demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is considered "material" if it might affect the outcome of the case under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is considered "genuine" if the evidence could lead a reasonable jury to find for the non-moving party. See *id.*; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The moving party has the burden of proving the absence of a genuine dispute of material fact, and all factual inferences are drawn in favor of the non-moving party. *See Allen v. Tyson Foods Inc.*, 121 F.3d 642, 646 (11th Cir. 1997); *Pennington v. City of Huntsville*, 261 F.3d 1262, 1265 (11th Cir. 2001) (noting that a court must "review the facts and all reasonable inferences in the light most favorable to the non-moving party"). Once the moving party satisfies its initial burden, the burden then shifts to the non-moving party to come forward with evidence showing a genuine dispute of material fact that precludes summary judgment. *Bailey v. Allgas, Inc.*, 284 F.3d 1237, 1243 (11th Cir. 2002); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); Fed. R. Civ. P. 56(e), (c). Speculation or conjecture cannot create a genuine dispute of material fact. *Cordoba*, 419 F.3d at 1181. The court may not weigh evidence to resolve a factual dispute; if a genuine dispute of material fact is present, the court must deny summary judgment. *Hutcherson v. Progressive Corp.*, 984 F.2d 1152, 1155 (11th Cir. 1993). Likewise, the court should deny summary judgment if reasonable minds could differ on the inferences arising from undisputed facts. *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1534 (11th Cir. 1992).

This standard is especially important when opposing motions for summary judgment are filed. As explained by the Eleventh Circuit, "[c]ourts should be very careful in their analysis to ensure that the proper party receives the benefit of the

summary judgment standard." *FCOA LLC v. Foremost Title & Escrow Servs. LLC*, 57 F.4th 939, 959 (11th Cir. 2023).

When deciding a summary judgment motion, a district court is only required to consider "the cited materials." Fed. R. Civ. P. 56(c)(3). Furthermore, "there is no burden upon the district court to distill every potential argument that could be made based on the materials before it on summary judgment. Rather, the onus is upon the parties to formulate arguments." *Solutia, Inc. v. McWane, Inc.*, 672 F.3d 1230, 1239 (11th Cir. 2012) (per curiam) (citing *Resol. Tr. Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (en banc)).

## DISCUSSION

### I.    Defendant's Motion for Summary Judgment

As the moving party for this motion, Defendant has the initial burden to prove that there is no genuine issue of material fact. *Allen*, 121 F.3d at 646. All factual inferences within this analysis are to be viewed by the Court in the light most favorable to Plaintiffs as the claimants and non-moving parties. *Id.*

### a.   Count I: Copyright Infringement, 17 U.S.C. § 102

For Plaintiff-claimants to successfully assert a claim of copyright infringement, the following elements must be established: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original."

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991) (citation omitted).

The first element, regarding ownership, requires compliance with 17 U.S.C. § 411(a), the applicable statute. Pursuant to § 411(a), registration is a necessary prerequisite to bringing a copyright infringement claim. *Fourth Est. Pub. Ben. Corp. v. Wall-Street.com, LLC*, 586 U.S. 296, 299 (2019).[2]

Here, Plaintiffs have provided a copy of the copyright registration for the Work, Dkt. 17-1, as well as the text of the copyright, Dkt. 64-1. Plaintiffs' ownership of this copyright is undisputed—therefore, the first element of copyright infringement has been established.

The second element consists of two subparts: factual and legal copying. *Compulife Software Inc. v. Newman*, 959 F.3d 1288, 1301 (11th Cir. 2020) (citing *BUC Int'l Corp. v. Int'l Yacht Council Ltd.*, 489 F.3d 1129, 1148 n.40 (11th Cir. 2007)). Factual copying concerns "whether the defendant actually used the plaintiff's material," *id.* (quoting *BUC*, 489 F.3d at 1148 n.40), and may be shown "either by direct evidence, or, in the absence of direct evidence, it may be inferred from indirect evidence demonstrating that the defendant had access to the

---

[2] Although registration is required to file suit for copyright infringement, *Fourth Estate Pub. Ben. Corp.*, 586 U.S. at 299 (2019), the creator of a work "has a valid copyright in an original work at the moment it is created," *Original Appalachian Artworks, Inc. v. Toy Loft*, 684 F.2d 821, 823 n.1 (11th Cir. 1982) (citing 17 U.S.C. § 102(a)). "Upon registration of the copyright . . . a copyright owner can recover for infringement that occurred both before and after registration." *Fourth Estate Pub. Ben. Corp.*, 586 U.S. at 299 (2019) (holding that an owner's copyright "exist[s] apart from registration"). Therefore, claims may be made pursuant to Plaintiffs' copyright back to the date the Work was first published.

copyrighted work and that there are probative similarities between the allegedly infringing work and the copyrighted work." *Id.* (quoting *MiTek Holdings, Inc. v. Arce Eng'g Co.*, 89 F.3d 1548, 1554 (11th Cir. 1996)). Access requires Plaintiffs to establish that Defendant had "'a reasonable opportunity to view' the work in question." *Corwin v. Walt Disney World Co.*, 475 F.3d 1239, 1253 (11th Cir. 2007) (quoting *Herzog v. Castle Rock Ent.*, 193 F.3d 1241, 1249 (11th Cir. 1999)). Although, access may not rest on "mere speculation or conjecture," *Herzog*, 193 F.3d at 1250 (citation modified), and cannot rest only upon the fact that "a work has been disseminated in places or settings where the defendant may have come across it." *Morford v. Cattelan*, No. 23-12263, 2024 WL 3857453, at *2 (11th Cir. Aug. 16, 2024) (citing *Herzog*, 193 F.3d at 1249–52). Instead, there must be some "nexus" established between the two works. *Herzog*, 193 F.3d at 1249–52.

Here, as to factual copying, Plaintiffs claim that Defendant has infringed their copyright by "reproducing, displaying, distributing, and creating derivative works of the Work and portions thereof without permission in violation of the Copyright Act, 17 U.S.C. § 106." Dkt. 17 at 8. Plaintiffs substantiate this claim with the bare assertion that they "discovered that [Defendant] was copying portions of their copyrighted material across over sixty Amazon listings." Dkt. 74 at 4. Plaintiffs thus provide no direct evidence of such copying, and the Court must instead look to indirect evidence of access and probative similarities.

The question of access—whether Defendant had "a reasonable opportunity to view" the Work—will ultimately depend on timing. *Corwin*, 475 F.3d at 1253 (quoting *Herzog*, 193 F.3d at 1249). In her deposition, Ms. Man Chun Li, the corporate representative for Defendant, testified that Defendant first published the listing at issue between 2017 and 2018. Dkt. 55-5 at 8:4-12. However, she further testified that the first bullet point, Dkt. 17-2 (" 【Food Safe】 "), was added to the listing after Defendant had their product lab tested, Dkts. 64-3, 64-4, 64-5, which occurred around February 5, 2024, Dkt. 55-5 at 13:12-14:2. If Plaintiffs' Work was not first published until January 3, 2024, Dkt. 17-1, and all but the first bullet point were published in Defendant's listing around 2017 or 2018, this means that access would have been a factual impossibility for all but the first bullet point. Thus, access to the first bullet point may have been possible during the one month between the Work's first publication on January 3, 2024, and the addition of the first bullet point in Defendant's listing around February 5, 2024. In establishing access, the Court finds that there is a sufficient nexus between Plaintiffs and Defendant, as they were both competitors within the same market, having listings published through the same online distribution partner, Amazon. Further, there are also probative similarities, as relevant portions of each listing relate to the product being food safe, lab tested, and in compliance with a certain FDA regulation.

Now that factual copying has been established through the indirect evidence of access and probative similarities, the Court turns to the legal copying analysis, which is limited to the first bullet point in Defendant's listing. Dkt. 17-2. Legal copying occurs when there is a "substantial similarity" between the two works that extends to the copyrighted work's "original, protectible elements." *Morford*, 2024 WL 3857453, at *2 (citing *Herzog*, 193 F.3d at 1249–52); *see Compulife Software Inc.*, 959 F.3d at 1302 (quoting *Bateman v. Mnemonics, Inc.*, 79 F.3d 1532, 1542 (11th Cir. 1996)) ("In most cases, a '"substantial similarity" between the allegedly offending program and the protectable, original elements of the copyrighted works' establishes [legal] copying."). To establish such similarities, courts utilize the "abstraction-filtration-comparison" test. *Bateman*, 79 F.3d at 1542 (citing *Comput. Assocs. Int'l v. Altai, Inc.*, 982 F.2d 693 (2d Cir. 1992)). In this analysis, courts: "break down the allegedly infringed [work] into its constituent structural parts," which is *abstraction*; then "sift out all non-protectable material" through *filtration*; and lastly, via *comparison*, the court will compare any remaining "kernels" of creative expression with the allegedly infringing work to determine if there is in fact a "substantial similarity." *Bateman*, 79 F.3d at 1543 (quoting *Altai*, 982 F.2d at 706).

As to abstraction, Plaintiffs have broken down the Work into a singular structural part—the latter portion of the second bullet point of their Work, which reads: "CARBON by Comfy Materials PETG is lab certified by both TÜV SÜD and

SGS, in compliance with FDA 21 CFR 177.1630." Dkt. 74 at 4. The Court notes that

the first bullet point of Defendant's listing reads: "● 【Food Safe】 Wellshow PETG

Filament is lab certified in compliance with 21CFR 177.2420." Dkt. 17-2.[3]

As to filtration, mere references to a product being food safe, lab tested, or in

compliance with certain FDA regulations do not constitute protectible materials—

there must be an original expression. *See MiTek*, 89 F.3d at 1556 n.19 (noting that it

is a "fundamental principle of copyright law that copyright does not protect an idea,

but only the expression of the idea"); *see Bateman*, 79 F.3d at 1545 (citation omitted)

("[F]iltration should eliminate from comparison the unprotectable elements of ideas,

processes, facts, public domain information, merger material, *scènes à*

*faire* material, and other unprotectable elements."). Plaintiffs sifted out what they

considered non-protectable from their second bullet point, and what remains are two

phrases: "PETG is lab certified" and "in compliance with." Dkt. 74 at 5. The

Eleventh Circuit has held that when an expression is "intrinsic to the communication

of an idea" and "there are sufficiently 'few ways of expressing [that] idea,'" the

expression is not protected by copyright. *Compulife Software, Inc.*, 959 F.3d at 1304

(quoting *BUC*, 489 F.3d at 1143); *see Morrissey v. Procter & Gamble Co.*, 379 F.2d

675, 678–79 (1st Cir. 1967) (referencing a case where the ideas expressed were "'so

---

[3] Defendant's use of both left and right black lenticular bracket ( 【 and 】 ) in their bullet points may at first seem strikingly similar, but the mere use of these symbols is not copyrightable, nor do Plaintiffs claim that this aspect of their Work was infringed upon.

straightforward and simple' that 'at best only a limited number' of possible modes of expression could exist to convey them"); *see also Dubay v. King*, 844 F. App'x 257, 265 (11th Cir. 2021) (citing *CMM Cable Rep v. Ocean Coast Props.*, 97 F.3d 1504, 1519 (1st Cir. 1996)) ("[M]ere words and short phrases, even if they occur in a copyrighted work, do not themselves enjoy protection against copying."). The Court thus finds the two short phrases referenced by Plaintiffs to be non-protectable, as these expressions are intrinsic to communicating that a 3D printer filament has been scientifically tested to certify that it is safe for contact with food, resulting in compliance with certain FDA regulations. The Court will utilize these phrases nonetheless for the comparison analysis.

Finally, regarding comparison, Plaintiffs claim that Defendants "indiscriminately" copied these phrases from their Work. While Plaintiffs' Work includes the phrase "PETG is lab certified," Dkt. 64-1, Defendant's listing includes the phrase "PETG Filament is lab certified," Dkt. 17-2. Additionally, both Plaintiffs' Work and Defendant's listing include the phrase "in compliance with," but Plaintiffs follow up this phrase with a reference to FDA 21 C.F.R. 177.1630, Dkt. 64-1, while Defendant follows it up with a reference to 21 C.F.R. 177.2420, Dkt. 17-2. For there to have been legal copying, the comparison must reveal a "substantial similarity" between the two works at issue. *Oravec v. Sunny Isles Luxury Ventures, L.C.*, 527 F.3d 1218, 1224 (11th Cir. 2008). "Substantial similarity" is found when "an average

lay observer would recognize the alleged copy as having been appropriated from the copyrighted work." *Id.* (citation omitted). Because of both the brevity and the differences in how these phrases are expressed, the Court finds that there is no genuine dispute that an average lay observer would not recognize the first bullet point of Defendant's listing to be a copy of the latter part of the second bullet point of Plaintiffs' Work. Defendant's product being mislabeled as PETG filament is not sufficient evidence of a "substantial similarity." Thus, the Court finds there is no genuine dispute of material fact that these two phrases lack the "substantial similarity" sufficient to establish legal copying.

Although the Court found factual copying as to the first bullet point of Defendant's listing through indirect evidence of access and probative similarity, Plaintiffs have both failed to proffer protectable elements of their Work and failed to establish a genuine dispute of material fact as to "substantial similarity" that would survive summary judgment. Upon the undisputed facts presented, and with all factual inferences viewed in the light most favorable to Plaintiffs, the Court finds that Plaintiffs have failed to establish a claim of copyright infringement that survives summary judgment. Thus, Defendant's motion for summary judgment is granted as to Plaintiff's Count I.

### b.  Count II: Lanham Act Violation, 15 U.S.C. § 1125(a)(1)(B)

For Plaintiff-claimants to succeed in a false advertising claim under § 43(a)(1)(B) of the Lanham Act, the following elements must be established: "(1) the advertisements of the opposing party were false or misleading; (2) the advertisements deceived, or had the capacity to deceive, consumers; (3) the deception had a material effect on purchasing decisions; (4) the misrepresented product or service affects interstate commerce; and (5) the movant has been—or is likely to be—injured as a result of the false advertising." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004) (citing *Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1247 (11th Cir. 2002)).

As to the first element—the false or misleading nature of the advertisement—the plaintiff must "show that the statements at issue were either '(1) commercial claims that are literally false as a factual matter' or '(2) claims that may be literally true or ambiguous but which implicitly convey a false impression, are misleading in context, or likely to deceive consumers.'" *Id.* at 1261 (quoting *United Indus. Corp. v. Clorox Co.*, 140 F.3d 1175, 1180 (8th Cir. 1998)). When determining if a claim is literally false as a factual matter, the Eleventh Circuit has held that "[i]t is well-settled that no proof of intent or willfulness is required to establish a violation of Lanham Act § 43(a) for false advertising." *Vector Prods. v. Hartford Fire Ins. Co.*, 397 F.3d 1316, 1319 (11th Cir. 2005).

17

Here, Defendant's listing labels the filament's material as PLA, but mentions PETG in the description; claims that the filament is "lab certified" and "food safe;" and further states that it complies with FDA regulation 21 C.F.R. 177.2420. Dkt. 17-2. Plaintiffs assert that these aspects of Defendant's listing are each false or misleading. Dkt. 65 at 9–12. Defendant responds, arguing that these aspects are neither false nor misleading, and that there is no genuine dispute of material fact. Dkt. 70 at 4–6. The Court will briefly review two of the aforementioned aspects: the composition of the filament and its compliance with 21 C.F.R. 177.2420.

Regarding the composition of the filament—Defendant lists the product in question as "PLA+(PRO)," Dkt. 17-2, references the material as "polylactic acid," *id.*, and later claims that this product is, in fact, PLA.[4] Dkt. 61 at 8. Although, the listing's description then mentions PETG, which is a different material. Dkt. 17-2. Defendant contends that this apparently false description was unintentional and caused by a "scrivener's error," Dkt. 61 at 8, but intent does not negate the falsity of a statement, *Vector Prods.*, 397 F.3d at 1319. Furthermore, Plaintiffs claim that there are undisclosed additives in Defendant's product, Dkt. 64 ¶¶ 10, 11, that are revealed

---

[4] PLA, which stands for "polylactic acid," Dkt. 63-5 at 50:5-12, is a plastic 3D printer filament that is formed into continuous strands and kept on spools, *see* Dkt. 17-2. This is then fed into a 3D printer to be extruded into the resulting printed design(s). *See id.* From the available record, the Court understands Defendant's designation of this product as "PLA+(PRO)" to merely be a marketing tactic, and not a signifier of a unique composition. *See* Dkt. 55-5 at 15:21-22 ("A: PLA Plus and the PLA Plus Pro are the same product. Just we had [sic] a name change."), 17:9-13 ("Q: What's the difference between PLA Plus and PLA Plus Pro? A: There is no difference whatsoever as to the product. Only the names of the products -- of the product has been changed.").

in the Additives Material Safety Data Sheet, Dkt. 64-7, but not in the PLA+(PRO) Test Report, Dkt. 64-4.

Regarding the product's compliance with FDA regulations—Defendant's listing states that the product is in compliance with FDA regulation 21 C.F.R. 177.2420.[5] Dkt. 17-2. This regulation relates to certain "cross-linked polyester resins" and their use in food-contact articles. 21 C.F.R. 177.2420. Defendant's product cannot be compliant with § 177.2420, as neither PLA, which is a "polylactic acid," Dkt. 63-5 at 50:5-12, nor PETG, which is a "petro chemical," *id.* at 50:13-22, are considered "cross-linked polyester resins."

The Court finds the analysis of the first element to be dispositive, as it provides sufficient evidence of a genuine dispute regarding falsity. Accordingly, the Court declines to address the remaining elements. Viewing all factual inferences in the light most favorable to Plaintiffs, the Court concludes that there are genuine disputes of material fact regarding Plaintiffs' Lanham Act Claim. Thus, Defendant's motion for summary judgment is denied as to Plaintiff's Count II.

Therefore, the Court grants in part and denies in part Defendant's motion for summary judgment. Dkt. 61. Summary judgment is granted to Defendant as to Plaintiffs' Count I (copyright infringement). Summary judgment is denied to

---

[5] Defendant's test report for this product shows that it does comply with certain FDA regulations, but not § 177.2420. Dkt. 64-4 at 2 ("Based on the performed tests on submitted sample(s), test result(s) comply with the regulatory requirements [of 21 C.F.R. § 175.300]").

Defendant as to Plaintiffs' Count II (false advertising under the Lanham Act), which shall proceed to trial.

## II.   Plaintiffs' Motion for Summary Judgment

Plaintiffs seek summary judgment against the counterclaim, which asserts tortious interference under Florida law. As the moving parties for this motion, Plaintiffs have the initial burden to prove that there is no genuine issue of material fact. *Allen*, 121 F.3d at 646. All factual inferences within this analysis are to be viewed by the Court in the light most favorable to Defendant as the claimant and non-moving party. *Id.*

For Defendant-counterclaimant to successfully assert its sole claim of tortious interference with a business relationship under Florida common law, the following elements must be established: "(1) the existence of a business relationship; (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the breach of the relationship." *Emergency Recovery, Inc. v. Gov't Emps. Ins. Co.*, 773 F. Supp. 3d 1304, 1309 (M.D. Fla. 2025) (quoting *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812, 814 (Fla. 1994)). Furthermore, the party claiming tortious interference with business relations must "establish that the defendant's conduct caused or induced the breach that resulted in the plaintiff's damages." *US Thrillrides, LLC v. Intamin Amusement Rides Int. Corp.*

20

*Est.*, 767 F. Supp. 3d 1331, 1348 (M.D. Fla. 2025) (quoting *Chi. Title Ins. Co. v. Alday-Donalson Title Co. of Fla.*, 832 So. 2d 810, 814 (Fla. 2d DCA 2002)).

Here, as to the first two elements, it is undisputed that a business relationship existed between Defendant and Amazon, Dkt. 47 ¶ 8 ("Admit that: 'Wellshow has developed and maintained ongoing business relationships with [Distribution Partners], such as Amazon.'"), and that Plaintiffs had knowledge of that relationship, *Id.* ¶ 12 ("Admit that: 'Sutherland and/or Comfy, aware of Wellshow's business relationships, contacted Distribution Partners, requesting the Distribution Partners to remove Wellshow's listings and/or prevent the sale of Wellshow products.'"). As to the last element, it is similarly not disputed that Defendant suffered damage due to Plaintiffs' takedown requests. *Id.* ¶ 15 ("Admit that: 'As a result of Sutherland and/or Comfy's interference, Distribution Partners, including but not limited to Amazon, removed Wellshow's listings, depriving and/or reducing Wellshow of access to Customers and causing significant harm to Wellshow's business, and preventing sales Wellshow would otherwise have made.'"). Plaintiffs' admission of their takedown requests and the resulting damage also sufficiently establishes the overarching requirement of causation.

The third element remains, which requires Plaintiffs' DMCA takedown requests to have been both intentional and unjustified—although, admissions by Plaintiffs have established intentionality. Dkt. 47 ¶¶ 12, 15, 19. Determining whether

such interference is unjustified "is a fact-intensive inquiry that requires 'an examination of the defendant's conduct, its motive, and the interests it sought to advance.'" *Duty Free Ams., Inc. v. Estee Lauder Cos., Inc.*, 797 F.3d 1248, 1280 (11th Cir. 2015) (quoting *Sec. Title Guarantee Corp. of Balt. v. McDill Columbus Corp.*, 543 So.2d 852, 855 (Fla. 2d DCA 1989)). This inquiry focuses solely on whether Plaintiffs' DMCA takedown requests were "justified." Insofar as Plaintiffs were properly acting upon a legal right, their interference will be considered justified. *See Sec. Title Guarantee Corp. of Balt.*, 543 So. 2d at 855 (citation modified) ("The unchallengable [sic] controlling principle is that so long as improper means are not employed, activities taken to safeguard or promote one's own financial interests are entirely non-actionable."). A properly submitted takedown request under the DMCA must comport with 17 U.S.C. § 512(c)(3)(A)(v), which requires the copyright holder to have "a good faith belief" that the use at issue "is not authorized by the copyright owner, its agent, or the law," and § 512(f)(1), which forbids a knowing misrepresentation that the use at issue is infringing upon the copyright.

Here, Plaintiffs claim that the "takedown submissions were made in good faith and based on [their] reasonable belief that the identified Amazon listings infringed [their] federally registered copyright." Dkt. 55-1 ¶¶ 12, 10, 41. Plaintiffs further assert that "Defendant offers no evidence—nor even an allegation—that Plaintiffs'

takedown requests contained any material misrepresentations, let alone knowingly material misrepresentations." Dkt. 58 at 7. Although the Court views all factual inferences in the light most favorable to Defendant, only minimal evidence has been provided by Defendant regarding Plaintiffs' alleged bad faith and misrepresentations—namely, that Plaintiffs did not have a successful copyright infringement claim and that they did not respond to Defendant's emails seeking to resolve the matter. Dkt. 66 at 6–7. First, the DMCA merely requires that a takedown request be made in good faith—the copyright claim underlying the request does not have to ultimately be successful. *Mishiyev v. UMG Recordings, Inc*, No. 8:23-CV-1942-MSS-NHA, 2025 WL 2624425, at *3 (M.D. Fla. Sept. 11, 2025) (citation modified) ("Courts are in no position to dispute the copyright holder's belief even if they would have reached the opposite conclusion."). Further, the Court finds Defendant's claim that Plaintiffs failed to respond to their emails insufficient to establish bad faith or misrepresentations. Dkt. 63-1 ¶ 7; Dkts. 63-2, 63-3.

The Court finds that Plaintiffs' sending of takedown notifications without responding to Defendant's emails "did not evince bad faith or entail the making of a material misrepresentation." *Johnson v. New Destiny Christian Ctr. Church, Inc.*, No. 6:17-CV-710-ORL-37DCI, 2019 WL 1014245, at *5 (M.D. Fla. Mar. 4, 2019), *aff'd*, 826 Fed. App'x. 766 (11th Cir. 2020) (citation omitted). Thus, the Court finds that Defendant proffered insufficient evidence to establish a genuine dispute of

material fact as to this key element. *See Anderson*, 477 U.S. at 248 (holding that a "dispute about a material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Therefore, the Court grants Plaintiff's motion for summary judgment on the counterclaim. Dkt. 58. Summary judgment is granted as to Defendant's sole count in the counterclaim.

## CONCLUSION

Accordingly, it is hereby **ORDERED** and **ADJUDGED**:

(1) Defendant's motion for summary judgment (Dkt. 61) is **GRANTED IN PART** and **DENIED IN PART**.

    a.  Defendant is **granted** summary judgment on Plaintiffs' Count I (Copyright Infringement).

    b.  Plaintiffs' Count II (False Advertising under the Lanham Act) shall proceed to trial.

(2) Plaintiffs' motion for summary judgment (Dkt. 58) as to the counterclaim of Tortious Interference is **GRANTED**.

**DONE AND ORDERED** in Tampa, Florida, on October 14, 2025.

*/s/ William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO**:
Counsel of Record

24